UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.R.V.,<br><br>    Plaintiff,<br><br>  v.<br><br>FERETI SEMAIA et al.,<br><br>    Defendants. | Case No. 5:26-cv-01069-SB-DSR<br><br><br>ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 6] |

Petitioner F.R.V., a citizen of Venezuela, seeks a temporary restraining order (TRO) requiring her immediate release from immigration detention after an immigration judge found her to be a flight risk.  The application is denied.

I.

Petitioner left Venezuela in January 2024 after experiencing persecution based on her sexual orientation.  She entered the United States on December 13, 2024 at the San Ysidro, California port of entry through a pre-scheduled U.S. Customs and Border Protection (CBP) appointment.  After fingerprinting Petitioner and conducting a background check, CBP released her from custody, placed her on parole, and issued a notice to appear initiating removal proceedings.  She was ordered to appear at an immigration court hearing on July 15, 2025.  Between her entry to the United States and that hearing, Petitioner lived and worked in Los Angeles.  She has no criminal history.

On July 15, 2025, Petitioner appeared at the immigration hearing without counsel.  The government moved to dismiss her removal proceedings, and the immigration judge (IJ) granted the motion without prejudice.  As she exited the courtroom, Immigration and Customs Enforcement (ICE) agents arrested her and seized her passport, birth certificate, and materials relevant to her asylum claim

1

and work authorization.  She has been detained at the Adelanto ICE Processing Center since July 15.

On August 25, 2025, the government issued a notice to appear recommencing removal proceedings under 8 U.S.C. § 1229a.  Petitioner was scheduled to appear at a hearing on March 17, 2026.  While detained, she applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  She also received a bond hearing on February 18, 2026, at which the burden was on the government to show by clear and convincing evidence that she was a flight risk or danger to the community.  The IJ found her to be a flight risk and denied bond.  Petitioner did not timely appeal the bond determination to the Board of Immigration Appeals (BIA).[1]

On March 6, 2026, Petitioner filed a habeas corpus petition and TRO application seeking her immediate release from custody based on procedural and substantive due process violations.  On March 12, the government filed an opposition; and on March 16, Petitioner replied.

## II.

The government argues that jurisdiction is barred "[t]o the extent that Petitioner seeks to overturn the immigration court's prior bond decision."  Dkt. No. 14 at 5.  While an individual must generally exhaust her administrative remedies before challenging an IJ's bond determination, *see Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), Petitioner does not challenge her bond proceedings but rather the circumstances of her arrest and detention.  The Court has jurisdiction to review such claims.  *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (noting that claims "collateral to the removal process" are reviewable); *see also Ton v. Noem*, No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at *2 (C.D. Cal. Sept. 3, 2025) (holding jurisdiction exists to review substantive due process claim) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

---

[1] The parties dispute whether Petitioner was afforded an additional bond hearing on January 21 before withdrawing her request for bond.  That dispute is immaterial to this order.

III.

On this record, Petitioner has not shown that she is entitled to a temporary restraining order.

A.

To obtain preliminary relief, a movant must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) that the balance of hardships tips in her favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting that the TRO and preliminary injunction standards are substantially the same).  In the Ninth Circuit, a preliminary injunction may issue where there are "serious questions going to the merits"—a "lesser showing than likelihood of success on the merits"—and a "balance of hardships that tips sharply toward the plaintiff," provided the other elements of the *Winter* test are also met.  *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (cleaned up).

B.

Petitioner primarily contends that her detention without a pre-deprivation "individualized determination that she presented a flight risk or danger" violated due process.[2]  *See Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Ninth Circuit has made clear, however, that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

Even assuming a significant liberty interest,[3] the government has a "strong interest" in enforcing the immigration laws.  *Id.* at 1208 ("Enforcement of our

---

[2] Petitioner also contends that her detention as unlawful because it fails to further the purposes of civil detention to mitigate the risk of flight or prevent danger.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The *Zadvydas* burden-shifting framework, however, applies only to individuals subject to final orders of removal. *See id.* at 701.

[3] Petitioner relies on *Morrisey v. Brewer* for the proposition that a parolee in a criminal case is given an "implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  408 U.S. 471, 482 (1972).  Like Petitioner, many district courts have invoked this principle without examining its

3

immigration law serves both a domestic law enforcement and foreign relations function."). Petitioner does not explain why the post-deprivation process here was inadequate to safeguard her liberty interest. *See Gurbhej Singh v. Warden of the Desert View Det. Facility*, No. 26-CV-897-MWF, 2026 WL 638869, at *4 (C.D. Cal. Mar. 3, 2026) (granting alternative relief of post-detention bond hearing and denying release request). That process included a bond hearing at which the government bore the burden to show by clear and convincing evidence that she was a flight risk or danger to the community—protections exceeding those typically required by 8 U.S.C. § 1226. Instead, Petitioner relies on district court cases in which the petitioner received no post-detention bond hearing. *See Sotomayor v. Bondi*, No. 5:25-CV-02939-CV, 2025 WL 3691398, at *1 (C.D. Cal. Nov. 14, 2025) ("Petitioner has not received an individualized hearing before a neutral decisionmaker to assess whether her recent detention is warranted."); *see also Aviles-Mena v. Kaiser*, No. 25-CV-06783, 2025 WL 2578215, at *2 (N.D. Cal. Sept. 5, 2025); *Castellon v. Kaiser*, No. 1:25-CV-00968, 2025 WL 2373425, at *10 (E.D. Cal. Aug. 14, 2025).[4]

On this record, Petitioner fails to show a likelihood of success on her procedural due process claim. Even assuming she raises a serious question going

---

applicability in the immigration context. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2025). That context, however, is important. *See Rodriguez Diaz*, 53 F.4th at 1205–06 ("[W]e interpret the Due Process Clause consistent with longstanding precedent recognizing that the process due aliens must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."). Petitioner has not shown that release on bond or conditional parole under § 1226—a discretionary decision by the executive branch to release a noncitizen during ongoing removal proceedings—confers a liberty interest comparable to that at issue in *Morrissey*.

[4] This case is also distinguishable from *Ramirez v. Semaia*, No. 5:26-CV-00662-MWC, 2026 WL 472260, at *3 (C.D. Cal. Feb. 18, 2026). In that case, the government did not provide a post-detention bond hearing and did not oppose release. *Id.* ("Regarding the government's interests, the Court remains cautious not to invade the province of the executive branch in immigration enforcement, normally opting to provide more limited forms of relief. . . . But where Respondents have explained that they do not oppose Petitioner's immediate release, ordering anything short of that relief would cause needless delay and interfere with the efficient administration of the nation's immigration laws.").

4

to the merits, she has not shown that the balance of hardships tips heavily in her favor, particularly in light of the IJ's finding that she poses a flight risk.  She has not appealed that decision to the BIA, and she has not shown that this Court has authority to revisit that factual finding.  *See Rodriguez Diaz*, 53 F.4th at 1209 (explaining that courts may review legal and constitutional claims but not factual determination underlying detention decision).  That finding bears on the remaining *Winter* factors.  The balance of hardships does not favor release where a presumptively neutral adjudicator has determined—under a clear-and-convincing standard—that Petitioner poses a flight risk.  Accepting that determination, continued detention serves the government's interest in ensuring Petitioner's appearance at future proceedings.  For the same reason, the public interest does not favor the relief sought.  Thus, Petitioner has not shown that either the balance of hardships or the public interest supports the extraordinary relief she requests.

Accordingly, the application for a TRO is denied.

IV.

The Court sets the following briefing schedule on the underlying habeas petition:  the government shall respond to the petition by March 31, 2026, and Petitioner shall file any reply by April 3.  The parties shall meet and confer about whether they agree to proceed before the assigned Magistrate Judge for all purposes.  Consenting to Magistrate Judge jurisdiction will expedite determination of the petition by avoiding the delay associated with the preparation and review of a report and recommendation.  If the parties consent, they shall file a joint statement of consent, signed by counsel for each side, by March 27.  Declining consent will not result in any adverse substantive consequences.

Date: March 24, 2026

_____
Stanley Blumenfeld, Jr.
United States District Judge

5