**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

F.R.V.,

               Petitioner,

     v.

FERETI SEMAIA, et al.,

               Respondents.

No. 5:26-cv-1069-DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

**1.     INTRODUCTION AND PROCEDURAL BACKGROUND**

On April 6, 2026, F.R.V. ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about July 15, 2025, filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging her ongoing detention as violative of her constitutional right to due process.  See generally First Am. Pet. (Doc. No. 21).  The Petition names as Respondents ICE as well as the Warden of the Adelanto Immigration and Customs Enforcement Processing Center where Petitioner is detained, the Acting Attorney General, the Secretary of the Department of Homeland Security, the Acting Director of ICE, and the Acting Los Angeles Field Office Director of ICE, each in his or her official capacity (collectively "Respondents").

Petitioner filed her original Petition in this case on March 6, 2026.  See Doc. No. 1.  Three days later, on March 9, 2026, Petitioner filed a First Ex Parte

Application for Temporary Restraining Order ("TRO").  See Doc. No. 6.  On March 12, 2026, Respondents filed their Opposition to the Ex Parte TRO Application, and Petitioner filed her Reply on March 16th.  See Doc. Nos. 14, 15.  On March 24th, the then-assigned District Judge denied the Ex Parte TRO Application, and invited the parties to consider consenting to have this case heard on the merits by a Magistrate Judge.  See Order Denying Ex Parte Application for Temporary Restraining Order (Doc. No. 16).

On March 26, 2026, both parties voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment.  See Doc. Nos. 17, 18.  The next day the parties stipulated to an extension of time to allow Petitioner to amend her Petition, which the Court approved on April 1, 2026.  See Doc. Nos. 19, 20.  Petitioner then filed her First Amended Petition on April 6, 2026, and Respondents answered on April 13, 2026.  See Doc. Nos. 21, 22.  Petitioner filed a Reply to the Answer on April 20th, see Doc. No. 24, and the matter was submitted for decision.  On June 26, 2026, Petitioner filed a Notice of Subsequent Authority.  See Doc. No. 25.

In denying the TRO Application, the District Judge was forced to act under the constraints of an emergency, compressed timeframe, and without the benefit of the First Amended Petition and full briefing thereon.  This Court now has the benefit of adequate time to consider the parties' arguments more fully, including the First Amended Petition, Respondents' Answer thereto, and Petitioner's Reply.  With those benefits, and for the reasons discussed below, the Court now finds that it is appropriate to **GRANT** the Petition and issue a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

**2.     FACTUAL BACKGROUND**

Petitioner is a native and citizen of Venezuela.  See First Am. Pet. at ¶ 16. After fleeing Venezuela due to her experience with persecution and torture based on her sexual orientation, Petitioner first entered the United States on or about

2

December 13, 2024, after presenting herself at the San Ysidro, California Port of Entry for a pre-scheduled CBP One appointment.  Id. at ¶¶ 16, 17.  After being detained for fingerprinting and a background check, immigration officials decided to release Petitioner on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  Id. at ¶ 17.  Concurrently, immigration officials issued Petitioner a Notice to Appear, thereby initiating removal proceedings and requiring her to appear for a hearing on July 15, 2025, in Van Nuys, California.  Id.

Following her release, Petitioner settled in the Reseda neighborhood in Los Angeles, California and began building community.  See First Am. Pet. at ¶ 18.  She obtained work authorization and worked cleaning homes and selling tacos.  Id.  Petitioner has no criminal history.  Id. at ¶ 20.

On July 15, 2025, Petitioner attended her scheduled hearing at the Van Nuys Immigration Court without counsel.  Id. at ¶ 21.  The Department of Homeland Security ("DHS") attorney moved to dismiss Petitioner's removal proceedings and the Immigration Judge ("IJ") granted the motion without prejudice.  Id. at ¶ 21.  After Petitioner exited the courtroom, however, she was approached by ICE agents and re-detained.  Id. at ¶ 22.  The ICE agents did not provide an explanation for the arrest, afford any process to contest the detention, grant Petitioner access to counsel, or offer her an opportunity to be heard prior to the arrest.  Id.  Petitioner was then transferred to Adelanto ICE Processing Center, where she remains detained.  Id. at ¶ 25.  Following the arrest, ICE issued Petitioner a new Notice to Appear and re-commenced removal proceedings under 8 U.S.C. § 1229(a), notwithstanding the fact that the Government had voluntarily dismissed removal proceedings against Petitioner immediately before they re-detained her.  Id. at ¶ 26.  While in detention, in early December 2025, Petitioner filed for asylum.  Id. at ¶ 27.

After Petitioner had been held in detention for six months, the Adelanto Immigration Court automatically scheduled a Rodriguez bond hearing for January

21, 2026.[1]  Id. at ¶ 28.  At the January 21st bond hearing, "Petitioner's counsel requested additional time to prepare and the IJ deemed Petitioner's bond request withdrawn."  Id.  Petitioner's counsel requested another bond hearing, and on February 18, 2026, the IJ conducted a Rodriguez hearing.  Id. at ¶ 29.  The IJ denied bond on the ground that Petitioner was a flight risk, and she had insufficient ties to her sponsor.  Id.  Petitioner remains detained at the ICE Adelanto Immigration facility.  Id. at ¶ 25.

**3.     LEGAL STANDARD**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here.

**4.     DISCUSSION**

Petitioner argues that Respondents violated her due process rights when they re-detained her without any predeprivation procedures.  See First Am. Pet. at ¶¶ 98-99.  Petitioner also argues in her First Amended Petition that the post-deprivation Rodriguez hearing she received was insufficient and erroneous due to the Immigration Judge's errors.  Id. at ¶¶ 101-102.  Lastly, Petitioner argues that Respondents have deprived her of her liberty without any legitimate purpose in violation of her substantive due process rights.  Id. at ¶¶ 104-108.

---

[1]     This refers to a bond hearing requested by a noncitizen subject to prolonged detention pending removal proceedings, pursuant to Rodriguez v. Robbins, 804 F.3d 1066 (9th Cir. 2015).  Such hearings take place only after the detainee has been in custody for at least six months.

Respondents argue in their Answer that the Petition should be denied because (1) they have discretionary authority to detain non-citizens pending determination of removal proceedings, (2) the Petition is moot, (3) this Court lacks jurisdiction, and (4) Petitioner has not exhausted her administrative remedies.  See generally Answer.  The Court will address first Respondents' arguments going to whether this Court may even hear the Petition before turning to the substantive merits of Petitioner's claims.

### A.   This Court Has Jurisdiction Over This Habeas Petition

Because a Court must first always determine whether it has jurisdiction to proceed before actually doing so, the Court will address Respondents' jurisdictional arguments first.  Respondents make two jurisdiction arguments: (i) this Court cannot hear this case at all in light of 8 U.S.C. §§ 1252(g) and (b)(9), and (ii) this Court cannot review the Immigration Judge's bond determination in light of 8 U.S.C. § 1252(e).  Neither argument is persuasive.

### i.   8 U.S.C. §§ 1252(g) and (b)(9)

Respondents argue that this Court lacks jurisdiction in this case pursuant to 8 U.S.C. §§ 1252(g) and (b)(9).  See Answer at Part III.D.  Neither provision divests this Court of jurisdiction to consider Petitioner's due process challenge to her detention.

Section 1252(g) is a narrow provision that "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm. (AADC), 525 U.S. 471, 482 (quoting 8 U.S.C. § 1252(g)). "Instead of 'sweep[ing]' in any claim that can technically be said to "arise from" the three listed actions,' the provision 'refer[s] to just those three specific actions themselves.'" Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) (plurality opinion)).  Here, Petitioner is not challenging any discretionary decisions or actions in the removal

case against her – she challenges her detention while those immigration proceedings are pending as violative of the Due Process Clause.

Section 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order … ."  That Section "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined.'"  Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)).  Because this challenge is to Petitioner's ongoing detention during removal proceedings, not the removal proceedings themselves, Section 1252(b)(9) does not apply.

### ii.      8 U.S.C. § 1252(e)

Respondents separately argue that 8 U.S.C. § 1252(e) prohibits this Court from considering any challenge to the Immigration Judge's denial of bond at the Rodriguez hearing.  See Answer at Part III.C.[2]  Respondents are incorrect on this point.  The Supreme Court has clarified the boundaries of judicial review in the immigration context by explaining that "[t]he application of a statutory legal standard ... to an established set of facts is a quintessential mixed question of law and fact" and is reviewable.  Wilkinson v. Garland, 601 U.S. 209, 212 (2024).  Following Wilkinson, the Ninth Circuit has held that an Immigration Judge's determination that a detainee poses a danger to the community or is a flight risk is

---

[2]      Respondents made the same argument in their Opposition to the Application for TRO.  See Doc. No. 14 at Part III.D.  The District Judge presiding over the case at that time rejected that argument in ruling on the TRO Application, because, at that time, Petitioner was not challenging the bond determination.  See Doc. No. 16 at Part II.  Since that time, however, Petitioner has filed a First Amended Petition that, in addition to challenging her July 15, 2025 re-detention, also challenges the validity of the bond determination.  Therefore, the Court will reconsider Respondents' argument on this point.

a mixed question of law and fact that may be reviewed for an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) ("Wilkinson compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question."); see also C.A.R.V. v. Wofford, No. 1:25-cv-1395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard.").

Under abuse-of-discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." Martinez, 124 F.4th at 785 (internal quotation marks omitted). Thus, the Court's review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." C.A.R.V., 2026 WL 241823, at *3 (internal quotation marks omitted); accord Kumar v. Noem, No. 1:26-cv-1148-DJC-AC, 2026 WL 983129, at *2 (E.D. Cal. Apr. 13, 2026); Hilario Pankim v. Barr, No. 20-cv-2941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). Accordingly, this Court has jurisdiction to review the IJ's February 18, 2026, denial of bond for abuse of discretion.

The Court therefore finds it has jurisdiction to consider this Petition.

### B.    The Petition is Not Moot

Respondents also argue that Petitioner's habeas claim is moot because she received a Rodriguez bond hearing on February 18, 2026. Answer at Part III.B. They contend that the bond hearing "moots the requested preliminary injunction and this habeas petition more generally."[3] Id. at 5:11-12.

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); see

---

[3]    Although Respondents contend that the February 18, 2026, bond hearing afforded to Petitioner "moots the requested preliminary injunction," the Court notes that there is no currently pending motion for a preliminary injunction in this case.

Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process.").  Detention under section 1226(a) is "discretionary" and "provides for release on bond or conditional parole."  Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).  Upon being detained under this provision, a detainee is entitled to a prompt, individualized bond hearing at which the government has "the burden of proving by clear and convincing evidence that continued detention is justified."  Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed, 2020 WL 8970669 (9th Cir. 2020); see also Martinez v. Clark, 124 F.4th at 785 ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community."); Melchor-Melchor v. Noem, No. 5:26-cv-00766-SSS-BFM, 2026 WL 760058, at *1-3 (C.D. Cal. Mar. 16, 2026) (petitioner detained under section 1226(a) was entitled to bond hearing before immigration judge where the government had burden to prove dangerousness or flight risk by clear and convincing evidence); Gutierrez v. Semaia, No. 5:26-cv-01181-HDV-ACCV, 2026 WL 916773, *5 n.3 (C.D. Cal. Mar. 27, 2026) (same). "The 'clear and convincing' standard requires the Government to present evidence to establish 'an abiding conviction that the truth of [the] factual contentions at issue is highly probable.'" N.A. v. Warden, Adelanto Det. Facility, No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *7 (C.D. Cal. Feb. 20, 2026) (quoting Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc)), report and recommendation adopted, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026).

Here, despite arguing that the First Amended Petition is moot because Petitioner received a bond hearing on February 18, 2026, Respondents offer no facts about the hearing to show that such hearing was legally sufficient.  Petitioner points out that the boilerplate form order from the IJ's bond decision gives only a three-word explanation: "Risk of Flight."  See First. Am. Pet. at ¶ 61; Doc. No. 14-4.

8

Petitioner alleges that the bond hearing violated due process because the IJ ignored key evidence and failed to hold DHS to its burden to justify detention by "clear and convincing" evidence.  First Am. Pet. at ¶¶ 53-54.  If Petitioner can establish that point, then Petitioner has not received a legally sufficient bond hearing since being detained on July 15, 2025.

The "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  Nw. Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988).  "A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries."  United States v. Alder Creek Water Co., 823 F.2d 343, 345 (9th Cir. 1987).  Here, a present controversy exists as to whether a hearing six months after the revocation of parole and resulting re-detention satisfies due process.  Even if it did, there is also a controversy over whether the Immigration Judge abused his discretion at the Rodriguez hearing, rendering the hearing legally insufficient.  See Zakharenkova v. Mullin, No. EDCV 26-2353-AS, 2026 WL 1454524 at *2 (C.D. Cal. May 19, 2026) (finding that the petition was not moot where respondents failed to demonstrate that the bond hearing was legally sufficient considering petitioner's allegations otherwise.)  Because, if Petitioner prevails on either of these issues, this Court can redress her injuries by ordering her release, this Petition raising those issues is not moot.

**C.      The Court Finds It Appropriate to Waive the Prudential Administrative Exhaustion Requirement**

Respondents also argue that because Petitioner has not appealed the February 18, 2026, bond decision, her habeas petition is barred for failure to exhaust administrative remedies.  See Answer at Part III.E.  Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  Because this requirement is "prudential" and not a "jurisdictional prerequisite,"

however, it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

Generally, prudential exhaustion may be required where the following factors are met: "(1) agency expertise makes consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted).  Even if the Puga factors weigh in favor of prudential exhaustion, courts may waive the prudential exhaustion requirement if the petitioner demonstrates one of the following factors applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury would result," or (4) "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, even if the Court assumes that the Puga factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile.  The administrative remedy Respondents suggest – appeal of the adverse Rodriguez bond determination – would be incapable of addressing the injury alleged. Petitioner claims that the original constitutional transgression occurred when ICE re-detained her without notice or a predeprivation hearing.  A post-deprivation bond hearing – let alone one at least six months after the re-detention – would not address the propriety of Petitioner's claim that she was not afforded constitutionally adequate procedural safeguards prior to the deprivation of her liberty interest.  See Padilla v. Mullin, No. 3:25-cv-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026) ("[Petitioner's] challenge falls squarely into the futility

exception to prudential exhaustion … [Petitioner's] claim is that he was entitled to process _before_ DHS could detain him, and that the Government's failure to provide him with predeprivation process makes his detention unconstitutional … No post-detention custodial hearing could fully address [Petitioner's] complaint or award him sufficient relief.").  Nothing the Board of Immigration Appeals could decide on appeal of the IJ's bond decision could cure the alleged wrongful re-detention months (if not by then years) earlier.  Petitioner's claim therefore falls squarely into the futility exception to prudential exhaustion, and waiver of the prudential exhaustion requirement is appropriate.

### D.   Petitioner's Re-Detention Violates Due Process

Having considered and rejected Respondents' various challenges to this Court's ability even to consider Petitioner's habeas claims, the Court now analyzes the merits of the Petition.  Petitioner alleges that her re-detention violates the Due Process Clause of the Fifth Amendment.  See First Am. Pet. at ¶¶ 97-99.  The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).

Respondents argue here (as they do now in many similar cases) that they are permitted by statute to arrest and detain a noncitizen during removal proceedings.  See Answer at ECF p. 4, ln. 14 - ECF p. 5, ln. 20.  "[T]he government's discretion to

11

incarcerate noncitizens is always constrained by the requirements of due process … ," however. Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017) (emphasis added). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh, 638 F.3d at 1203).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).

"Substantive due process protects individuals from state action that interferes with fundamental rights." Id. at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it

12

was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

Petitioner raises both procedural and substantive due process claims in her First Amended Petition.  The Court begins with the procedural due process claim.

### i.    Petitioner Has a Constitutionally Protected Liberty Interest in her Release on Humanitarian Parole

It is uncontroverted that Petitioner presented herself at the port of entry in December 2024, was detained, and then released into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  First Am. Pet. at ¶ 17.

Once Petitioner was released from immigration custody on parole, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their

liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Deprivation of that protected interest required due process of law.  The Court now turns to whether Respondents afforded Petitioner such due process.[4]

**ii.      Respondents' Deprivation of Petitioner's Liberty Interest by Revoking her Parole and Re-detaining Her Failed to Comply with the Requirements of Due Process**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals

---

[4]      Respondents now assert in their Answer to the First Amended Petition (they did not in opposition to the TRO Application) that Petitioner's parole expired on April 18, 2025, and that the applicable regulations provide that they could revoke such parole by serving Petitioner with a Notice to Appear.  See Answer at ECF p. 4, lns. 15-20.  Respondents did not re-detain Petitioner upon any expiration of her parole in April 2025, however.  They did not arrest her until three months later, on July 15th, when she left her Immigration Court hearing after Respondents moved to dismiss the removal proceedings against her on the ground that "it was no longer in the best interest of the government to pursue those proceedings." First Am. Pet. at ¶ 21.  And it was not until after they had re-detained Petitioner that Respondents then served her with a new Notice to Appear, initiating new removal proceedings.  Id. at ¶ 26.

14

of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### a.   Private Interest

Petitioner's private interest is substantial.  Petitioner has a considerable liberty interest in maintaining her life out of custody via Section 212(d)(5) parole. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690.

While she was released on immigration parole, Petitioner "began establishing her life in the United States," settling in a neighborhood in Los Angeles, building a community and friendships, obtaining work authorization and documents, and working cleaning homes and selling tacos.  See First Am. Pet. at ¶18.  As such, the first Mathews factor weighs strongly in Petitioner's favor.

### b.   Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation through the procedures used is significant here because there do not appear to have been any procedures used, at least prior to Respondents' re-detention of Petitioner.  According to the First Amended Petition (and not contested in the Answer), Respondents re-detained Petitioner without any explanation, process, access to counsel, or an opportunity to be heard prior to the arrest.  See First Am. Pet. at ¶ 22.  Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690.  "In releasing Petitioner on humanitarian or significant public benefit parole," the Government "necessarily found Petitioner did not pose a significant flight risk or danger to the community."  Medrano-Rocha v. Santacruz,

No. CV 26-00404-KK-AGRX, 2026 WL 411355 at *4 (C.D. Cal. Jan. 23, 2026) (citing 8 C.F.R. § 212.5(b)).

Respondents argue now in their Answer to this First Amended Petition (though not in their Opposition to the TRO Application) that Petitioner's parole was revoked when it expired on April 18, 2025.  See Answer at ECF p. 4, lns. 15-16. Assuming that was the reason for Petitioner's re-detention (and not a post hoc rationalization in response to this habeas petition), that may, or may not, have constituted sufficient changed circumstances to justify changing the determination immigration officials made in originally releasing Petitioner on parole that she was not dangerous and not a risk of flight.  That question, however, is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of her substantial liberty interest in her parole release and subjected to months of detention.

In the words of Mathews, "the probable value, if any, of additional or substitute procedural safeguards" 424 U.S. at 335, is high in this circumstance.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested

> contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Thus, the second Mathews factor similarly favors Petitioner in this case.

<b>c.    Government Interest</b>

Regarding the third Mathews factor, "[o]f course, the government and the public have a significant interest in 'enforcement of the United States's immigration laws,' [record citation omitted], but that includes an interest in 'upholding procedural protections against unlawful detention.'"  Nguyen v. Noem, 817 F. Supp. 3d 889, 900 (C.D. Cal. 2025) (second internal quote from Pinchi, 792 F.Supp.3d at 1037).  Thus, the governmental interest in this prong of the Mathews analysis is not an interest merely in being able to revoke a non-citizen's parole, but rather the interest in summarily revoking that status and re-detaining the person without any notice or opportunity to be heard.  Courts have routinely recognized that such interest is "low."  See, e.g., Gourav v. Janecka, No. EDCV 26-1253 MWF (DSR), 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026); Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025); see also Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *10 (E.D. Cal. Jan. 29, 2026) (the government interests in protecting the public from harm and preventing the noncitizen's flight "are adequately protected by having a neutral adjudicator evaluate whether a noncitizen presents these risks."); Telenchana v. Hermosillo,

17

No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[T]he governments interest in [petitioner's] re-detention without adequate process is minimal or non-existent."); Chel v. Larose, No. 26CV1114-LL-BLM, 2026 WL 926902, at *3 (S.D. Cal. Apr. 6, 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low.").

While the Government does have such an interest, on the facts of this case in particular, the "fiscal and administrative burdens that the additional or substitute procedural requirement [of a pre-deprivation hearing] would entail," Mathews, 424 U.S. at 335, if any, are negligible.  Petitioner was re-detained as she exited the Immigration Court, where Respondents had just dismissed the removal case against her.  See First Am. Pet. at ¶¶ 21-22.  The parties were literally in court that day, on the removal case against Petitioner.  There was no greater fiscal or administrative burden on Respondents in raising any need to re-detain Petitioner at that hearing than in their chosen alternative of dismissing that case and then re-detaining Petitioner without any hearing as she left the courtroom.  The difference to Petitioner, however, was profound because she had no opportunity to challenge that re-detention, or even any knowledge that it was about to happen.

Therefore, on these facts the Mathews balance tips decidedly in favor of Petitioner.  Petitioner's personal interest is high, the risk of erroneous determination under the procedures employed is great, and fiscal and administrative burdens to Respondents of providing a pre-deprivation hearing was negligible.  The Court thus concludes that Petitioner's re-detention on July 15, 2025, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights.  See, e.g., Mourey v. Bowen, No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors

show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**E.    The February 18, 2026, Rodriguez Hearing Did Not Cure the Due Process Violation in Petitioner's Re-detention**

Respondents argue that "Petitioner's recent individualized bond hearing is strong evidence that 'the existing agency procedures sufficiently protected [Petitioner's] liberty interest and mitigated the risk of erroneous deprivation.'" See Answer at ECF p. 12, lns. 4-6, quoting Rodriguez Diaz, 53 F.4th at 1208.  Though not couched as such, this may be an attempt to argue that Petitioner's due process claim should fail because post-deprivation process satisfies the Fifth Amendment here.  To the extent this is what Respondents mean to argue, the Court is not persuaded for two reasons.  First, a post-deprivation hearing offered to Petitioner six months after re-detaining her does not satisfy the Fifth Amendment.  Second, the IJ abused his discretion at the February 18, 2026, Rodriguez hearing.  The Court will address these reasons in turn.

**i.    A Post-Deprivation Hearing is Insufficient in This Case**

A post-deprivation hearing cannot satisfy the requirements of due process in these circumstances.  Offering a detainee a hearing on the revocation of her constitutionally protected interest in her release on parole only after she has already been detained for six months does not satisfy the Fifth Amendment in these circumstances.  "Due process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest."  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19, (1978); Sinaloa Lake

19

Owners Ass'n v. City of Simi Valley, 864 F.2d 1475, 1481-82 (9th Cir.1989)).  While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements of due process, that is the exception, not the rule.  See Soranno's Gasco, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process").  Indeed, the Supreme Court has held "[w]e tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); see also Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Respondents have not offered any "necessity of quick action" or "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's parole, let alone a Rodriguez hearing that is not available until six months after the revocation and re-detention.  It would not have been "impracticable" for immigration authorities to provide Petitioner with meaningful pre-deprivation process before re-detaining her outside the Immigration Courtroom in Van Nuys.  As discussed above, the parties literally were just before the Immigration Judge.  Rather than raising at that hearing their contention that Petitioner needed to be re-detained pending removal, Respondents instead dismissed those removal proceedings, and then summarily re-detained Petitioner as she left the courtroom.  The facts of this case do not support the post-deprivation exception to the general rule requiring pre-

deprivation notice and an opportunity to be heard.  Accordingly, the Court finds that a post-deprivation hearing did not satisfy due process in this case.

### ii.   The Immigration Judge's Denial of Bond Was an Abuse of Discretion

In denying the TRO Application, Judge Blumenfeld found that Petitioner had not shown a likelihood of success on the merits on her procedural due process claim because she did "not explain why the post-deprivation process here was inadequate to safeguard her liberty interest."  Order Denying TRO Application at 4.  Petitioner has now made that showing, however, via her First Amended Petition filed after the TRO denial.  First, she argues that a pre-deprivation hearing, not a post-deprivation hearing, was required.  See First Am. Pet. at p. 39.  As discussed in the preceding section, the Court agrees.  Moreover, Petitioner also now alleges that even if a post-deprivation hearing could suffice, the Rodriguez hearing she received in this case was nevertheless insufficient.  Id. at ¶¶ 53-69.

As discussed above, the outcome of a bond hearing is a mixed question of law and fact that this Court may review for abuse of discretion.  See Martinez v. Clark, 124 F.4th at 783.  The Ninth Circuit has explained that when assessing whether an alien "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the

alien's history of immigration violations; (8) any attempts

by the alien to flee prosecution or otherwise escape from

authorities; and (9) the alien's manner of entry to the

United States.

Id. at 783 (quoting In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)).  An IJ has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative."  Id. at 784.

The Ninth Circuit has also explained, however, that an IJ "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]."  Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors").

Here, the Immigration Judge's February 18, 2026, written opinion fails to include any discussion of the evidence submitted by Petitioner or explanation of the reasons for the IJ's decision.  See Doc. No. 14-4.  It states only that "[a]fter full consideration of the evidence presented, the [Petitioner's] request for a change in custody status is hereby ordered: [¶] Denied, because [¶] Risk of Flight."  Id.  The opinion does not include any other explanation, analysis, or findings.  Id.  The Immigration Judge failed to include any discussion of the evidence submitted by Petitioner or provide an explanation of the reasons for his decision.  Such failure is an abuse of discretion.  See, e.g., Miri v. Bondi, No. 5:26-cv-0698-MEF-MAR, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (holding that immigration judge abused its discretion in denying bond because the judge "did not explain the reasons for denying Miri's bond," and "did not describe which Martinez factors were considered, if any, or what evidence was relied on"); Vasquez Lopez v. Hernandez, No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) ("The Court

is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion."); Kumar, 2026 WL 983129, at *2 ("The IJ's failure to provide any basis for the decision that Petitioner was a risk of flight, beyond a conclusory statement that DHS had met its burden, was thus an abuse of discretion."); Lopez Santana v. Marin, No. 1:26-cv-0915-DJC-JDP, 2026 WL 1179732, at *2 (E.D. Cal. Apr. 30, 2026) ("The IJ's failure to provide any explanation for the bond denial, including addressing the evidence submitted and the factors that the IJ considered, was an abuse of discretion.").

The Immigration Judge's oral explanation on the record at the Rodriguez bond hearing does not cure this deficiency.  The verbal record shows that the IJ concluded that Petitioner posed a flight risk based on that Court's perception that Petitioner lacked sufficient ties to her sponsor under Matter of R-A-V-P, 27 I. & N. Dec. 803 (BIA 2020) because the sponsor was a non-relative.  See Doc. No. 21-1, Ex. "A" at 9.  The IJ stated "there's just no information, there's no ties to the sponsor and the respondent, so that's not sufficient ties enough for me to conclude that she would not be a risk of flight."  Id.  Thus, notwithstanding the Judge's statement that the Government had met its burden to show by clear and convincing evidence a risk of flight (as required under the Rodriguez injunction that the Judge was applying), the Judge actually found against Petitioner because Petitioner did not show sufficient ties to her sponsor.  Moreover, the Immigration Judge did not explain why that fact meant that Petitioner would be a flight risk.  Id.; see Soriano v. Hernandez, No. 2:26-cv-0900-DGE, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026) ("While it might be rational to draw such conclusion based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case.").  The IJ's failure to consider any mitigating facts such as Petitioner's history of compliance with immigration requirements,

23

including her pro se appearance at her July 15, 2025 hearing in Van Nuys and written testimony regarding Petitioner's employment history of cleaning houses, also demonstrates that the IJ failed to "consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); First Am. Pet. at p. 20, lns. 1-5.

Finally, the Court also notes that both the written opinion and the oral record from the hearing demonstrate that the IJ did not address any alternative to detention such as conditions of release or bond. See Doc. Nos. 14-4, 21-1 at 9. This failure to consider alternatives to detention also violates the terms of the Rodriguez injunction. See Rodriguez, 715 F.3d at 1139.

Thus, unlike at the TRO stage of this case, Petitioner has now through her First Amended Petition explained why the post-deprivation process – the Rodriguez hearing – was inadequate to safeguard her liberty interests. First, the facts of this case do not justify permitting a post-deprivation hearing instead of the normal rule of pre-deprivation process. And second, even if a post-deprivation hearing theoretically could meet the requirements of the Due Process Clause, the particular hearing Petitioner received in this case failed to suffice because the Immigration Judge abused his discretion by failing to consider and address in its entirety the evidence submitted by Petitioner and explain the reasons for the decision. See Franco-Rosendo, 454 F.3d at 966; Barrera-Leyva, 653 F.2d at 380. Accordingly, the Court finds that Respondents' re-detention of Petitioner on July 15, 2025, violated her procedural due process rights. The Court will therefore now turn to the question of the appropriate remedy.

**F.   Immediate Release is the Appropriate Remedy**

Given this violation of Petitioners due process rights, the Court concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3,

2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on parole, which she enjoyed until being summarily re-detained outside the immigration courtroom on July 15, 2025.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same parole conditions that were in place before the unconstitutional re-detention.  For the same reason that Respondents may not revoke Petitioner's parole without affording her due process, they also may not change the conditions of that parole without affording Petitioner due process.  This does not mean that Respondents can never change the conditions of Petitioner's release – only that they have to follow due process in doing so.  Return to the status quo similarly means return to Petitioner any personal property and documents seized from her at the time of her re-detention.

Finally, Petitioner requests in the Petition that the Court "[e]njoin Respondents from re-arresting Petitioner without a pre-deprivation hearing before a neutral decisionmaker where Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to community such that detention is required, and where the decisionmaker considers alternatives to

detention." First Am. Pet. at p. 35, ln. 26 – p. 36, lns. 1-3 (prayer ¶ 8). Though given the opportunity to do so in their Answer, Respondents do not address that issue at all. The Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)). Habeas relief is not limited to "discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds Petitioner has made such a showing here. First, Petitioner has suffered an irreparable injury by being re-detained without due process of law and would again if Respondents repeat such conduct. There is no indication that Respondents' well-publicized efforts to detain non-citizens no longer pose a threat to Petitioner of a repeat of

26

the same deficient re-detention as occurred in July of last year.  Second, legal remedies such as damages would be inadequate to cure the unconstitutional loss of her liberty while Petitioner is in detention awaiting court action on another habeas petition again challenging the deprivation of her due process rights.  And finally, the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they again seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win her release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.  Thus, a permanent injunction prohibiting Respondents from repeating the same unconstitutional re-detention of Petitioner that necessitated this habeas case is appropriate.

### G.    Petitioner's Remaining Claims and Request for Relief

Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it is unnecessary to reach her alternative argument for violation of substantive due process.  See generally First Am. Pet. at ¶¶ 103-108.

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act.  Id. at prayer ¶ 10.  The Court will consider requests for costs and attorney's fees upon compliance with the procedural requirements of that Act and Local Rules 54-2 (costs) and 54-7 (attorney's fees).

### 5.    CONCLUSION

Respondents are presently holding Petitioner in their custody in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241.

**IT IS THEREFORE ORDERED** that:

1.  The Petition for Writ of Habeas Corpus is **GRANTED.**

2. Respondents shall immediately release Petitioner **F.R.V. (A-244-843-771)** from custody and reinstate her release under the same conditions that were in place before her re-detention on July 15, 2025.

3. Respondents shall also return to Petitioner any personal property and documents seized from her at the time of her re-detention, and provide Petitioner with a copy of this Order at or near the time of release.

4. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents.

5. Respondents are enjoined from re-detaining Petitioner without prior notice and an opportunity to be heard on the reasons for the proposed revocation of parole and re-detention.

6. The Court will issue Judgment consistent with this Order. Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules. The Court retains jurisdiction to adjudicate any collateral enforcement issues.

**IT IS SO ORDERED.**

DATED: July 22, 2026          _____

                             HON. DANIEL S. ROBERTS
                             UNITED STATES MAGISTRATE JUDGE

28